July 7, 2005

The Hon. Nicholas G. Garaufis, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East, Room 659
Brooklyn, NY 11201

**Re: United States v. Anthony Urso, 03-CR-1382 (S-1)-01 (NGG)**

Your Honor:

I respectfully write on behalf of Anthony Urso, the defendant in the above referenced matter, to address this Court with respect to sentencing. Specifically, as set forth in detail below, defendant requests that this Court exercise its discretion pursuant to United States v. Booker, 125 S. Ct. 738 (2005), to depart downward from the advisory Guideline level and impose a sentence of 240 months' imprisonment or below.

This Court should impose such a sentence, first and foremost, because it was bargained for and agreed upon in the plea agreement executed by Mr. Urso and the Government on February 9, 2005. Paragraph 2 of that agreement specifies that defendant and the Government stipulate to a Guideline offense level of 40, but that both parties jointly "agree to recommend that the defendant be sentenced to a term of incarceration of 240 months." This agreement was made with specific reference to Fed. R. Crim. Pro. 11(c)(1)(B), which permits the parties to a plea agreement to agree upon an appropriate sentence.

While the bargained-for sentence is not binding upon the Court, defendant respectfully submits that Your Honor should nevertheless abide by it and depart downward from the applicable guideline range. A sentence of 240 months represents the combined judgment of the defendant, the Government and their counsel - i.e., the parties most familiar with the case. Neither party has learned of any facts since February 9, 2005 that would alter this judgment. Accordingly, upon sentencing the defendant, this Honorable Court should impose a sentence of 240 months or lower.

-1-

Moreover, in the event that this Court does not deem the plea agreement sufficient reason by itself to depart downward from the applicable Guideline range, there are still other compelling reasons why it should nevertheless do so. To begin with, this Court should depart downward due to Mr. Urso's extraordinary family circumstances. The Sentencing Guidelines provide that "family ties and responsibilities are not *ordinarily* relevant in determining whether a departure may be warranted." See U.S.S.G. § 5H1.6 (emphasis added). However, it is well settled in the Second Circuit, that *extraordinary* family circumstances "may constitute proper grounds for departure." See United States v. Johnson, 964 F.2d 124, 128 (2d Cir. 1992); see also United States v. Huerta, 371 F.3d 88, 94 (2d Cir. 2004). Defendant submits that the instant case is an example of the circumstances under which a departure on this ground is warranted.

As set forth in the Presentence Investigation Report ("PSI"), the defendant is the father of two sons, one of whom died in 1991 at the age of 28 from a drug overdose. See PSI, ¶ 105. Since the death of defendant's wife after a long battle with cancer, his surviving son has no family other than Mr. Urso. The surviving son, Steven Urso, has "lost his mother and brother [and] is now losing his father." See id., ¶ 105. During a telephone interview with the Probation Department, Steven further described defendant as "the only one he has left" and expressed "frustration and fear" about his father's future and his own. See id., ¶ 106.

In addition, Mr. Urso's life partner, Gail Feinstein, is now sixty years of age and has now been left alone. Ms. Feinstein is and has always been very dependant (both emotionally as well as physically and financially) on Mr. Urso to maintain home life and living conditions. Since Mr. Urso's incarceration, she has had to seek therapy for deep depression and is presently on medication. Furthermore, Ms. Feinstein suffers from glaucoma and sleep apnea. See id., ¶ 107. As such, defendant is a caretaker for Ms. Feinstein. In addition, the PSI describes him as a "father figure" for Ms. Feinstein's daughter Jodi, who resided with the defendant during the early years of his relationship with Ms. Feinstein. See id. Therefore, this Court should depart downward the sentence of 240 months in order to preserve defendant's family unit.

A second ground upon which this Court should depart downward is defendant's age and medical condition. Mr. Urso was born on July 2, 1936 and is therefore approaching his 69th birthday. Moreover, the PSI reveals that he is in poor health. In addition to the fact that he continues to be deeply depressed over the death of his older son as well as the long battle and eventual death of his wife from cancer, he suffers from continual prostate problems including elevated prostate specific antigen (PSA), hyperplasia of prostate, and kidney cyst. See PSI, ¶¶ 113-14. He further suffers from sciatica which affects both legs down to the ankles, which requires him to "stretch out for 30 minutes each morning" in order to retain his mobility. See id., ¶ 113. He also takes prescription medication for high blood pressure, pain, rhinitis and a dental abscess. See id., ¶ 114.

Accordingly, this Court should find that given defendant's age and medical condition, he would be highly unlikely to survive a sentence of 240 months. Therefore, defendant respectfully asks this Honorable Court to depart downward below the agreed upon sentence of 240 months so that he can have some hope of surviving his sentence and spending his last years with his family.

Third, it should be noted that the defendant is dyslexic, has a fifth grade education and cannot read or write. See PSI, ¶¶ 117, Given that Mr. Urso attended school in the 1940s before dyslexia was widely understood, he received no treatment and was forced to quit school in frustration and embarrassment. See id. He remains illiterate to this day, which is a major source of embarrassment for him. See id. In the PSI, Ms. Feinstein, whom has lived with Mr. Urso for the past fifteen years and who is the living individual who knows Mr. Urso best made an enlightening and revealing statement. She said upon being asked about Mr. Urso's involvement in a life of crime, "that due to his severe dyslexia he felt that he could never get anywhere in life." This observation is very consistent with Mr. Urso's background and throughout his life. He was denied entry into the Marine Corps and was not able to gain his father's approval because of his inability to learn in school as a very young boy. Needless to say, these were traumatic experiences and continue to be to such a degree that anyone outside his sphere could never comprehend. Mr. Urso's inability to read or write are severe handicaps to him while incarcerated because it puts him in a vulnerable, dangerous and compromising position. Due to these handicaps, Mr. Urso can easily be exploited. Defendant submits that this condition represents a diminished mental capacity that warrants a departure downward from the applicable Guideline range, and imposition of the bargained-for sentence of 240 months.

Another ground upon which this Court should depart downward is the defendant has had a lengthy presentence incarceration under harsh conditions, overcrowded conditions, particularly in the MDC dormitory of the east building or "OLD" building, where Mr. Urso has been housed since his incarceration. These conditions are the cause of serious deprivations of the detainee's constitutional rights and further, the facility has not kept up with the "contemporary standards of decency." See, Estelle v. Gamble, 429 US 97 (1996).

The facility is in violation of the standards set by the United Nations and American Public Health Association by providing 37.5 square feet of living space which is half of that recommended by the above stated organizations. See, United Nations Standards. During the time of his presentence incarceration, Mr. Urso has been exposed to Chicken Pox, (facility has been quarantined on several occasions for Chicken Pox outbreaks), Mr. Urso's unit has also been quarantined for TB outbreaks. In addition, due to poor ventilation and lack of sunlight (Mr. Urso has not been outdoors for over 17 months), sickness runs rampant in the dormitory and the fight against fungus and ringworm is a constant one.

Another issue that the Court should consider prior to imposing sentence is that Mr. Urso is 69 years old, and while it is alleged that Mr. Urso has been involved in organized crime for over thirty years, he has never been arrested prior to this incarceration none of the high ranking, long standing organized crime figures that are cooperating with the Government ever shed light on any acts of violence in the past on Mr. Urso's part. Mr. Urso wants it clear that he was not a shooter in this indictment or in any other case.

Finally, even assuming *arguendo* that none of the grounds specified above warrant departure by themselves - which each of them do - this Court should nevertheless depart downward due to their combined weight. In United States v. Shuster, 331 F.3d 294, 296 (2d Cir. 2004), the Second

Circuit reaffirmed that downward departures may be granted pursuant to U.S.S.G. § 5K2.0 based on the totality of the circumstances even if they would not be justified by any single ground taken alone.  In the instant case, defendant submits that the combined weight of the plea agreement, his extraordinary personal and family circumstances, his age, medical condition, and his diminished capacity due to dyslexia and illiteracy warrant a downward departure when taken together, even if they would not when considered individually.

In light of the foregoing, it is respectfully submitted that this Honorable Court grant the instant application, depart downward from the Guideline range set forth in the PSI, and impose a sentence lower than the 240-month sentence agreed upon in the February 9, 2005 plea agreement.

Respectfully submitted,


Edward P. Jenks
Attorney for Defendant


cc:     AUSA Greg D. Andres
        Sr. USPO Diane Cicchetti Nelson