UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF NEW YORK



Anthony Urso,
    Petitioner

v                          |   Civil Action No.:_____

                             Crim. Action No.: 03-CR-1382 (NGG)

United States of America,
    Respondent

---

PETITIONER'S MOTION FOR MODIFICATION OF SENTENCE
PURSUANT TO 18 USC §3582(c)(2);
DUE TO COMPELLING AND EXTRAORDINARY CIRCUMSTANCES,
(IN LIGHT OF NEW CASE LAWS IN (U.S. V. WALKER)
NO. 95-CR-101 (N.D.N.Y (2019) & (U.S. V. Maupin),
NO. 19-6817); CONCNERING THE CHANGE IN LANGUAGE
PURSUANT TO 18 USC §§1962(d) AND 1963(A);
IN WHICH PETITIONER PREVIOUSLY PLEAD TO; HAD HE
PLEAD TODAY, WOULD HAVE BEEN SENTENCED BELOW
THE MANDATORY MINIMUM GUIDELINE RANGE (AND ALIKE)

---

    NOW COMES Anthony Urso, pro se (hereinafter "Petitioner" or "Mr. Urso")
in the above-captioned matter, and hereby requests that this Honorable Court,
pursuant to 18 USC §3582(c)(2) GRANT Petitioner's Motion and Request for a
reduced sentence as a matter of current law changes. As for legal reasons
thereof, Mr. Urso states the following:

## I.  BACKGROUND

    Petitioner, on or around February 2005, plead guilty to one (1) count
of RICO Conspiracy in violation of 18 USC §§1962(d) and 1963(A); and subsequently
he was sentenced to 240 months imprisonment with three (3) years of supervised
release. As of this timely filing, Petitioner is 83-year old; having served
more than seventeen (17) years consecutively, while, amazingly, NEVER receiving
one sanction from the BOP staff.

    Over the years, Petitioner filed motions for relief, all being denied.
Petitioner's most recent motion (and Court denial) centered around a Petition
for Compassionate Release; citing (on or around March 2019)  1) Elderly Home
Detention Pilot Program; 2) Over the age of 60; 3) Inmate having served "two-

thirds" of his sentence; 4) method of incarceration (and alike); under 3582(c)(1)(B) or 34 USC §6054(g)(1)(c). The Court determined that it had no authority to modify Elderly Home Detention Pilot Program because, "only the BOP is permitted to do so, while the Court is only permitted to modify an imposed "term" of imprisonment."

Of great legal consequence, Petitioner now files this appropriate motion and request based on new favorable caselaws affecting Petitioner's case on multiple fronts such as;

1) Change of "first impression" due to changes of language of the statute in which Petitioner plead;

2) Change of Guidelines Range had Petitioner plead today; he would (should) have legally plead to a lesser range;

3) New compelling and extraordinary health "Potentially terminal" respiratory health issues stemming from the Coronavirus pandemic; and alike (just to name a few here).

## II.  PRELIMINARY STATEMENT

Legal Standard(s):

This Court has jurisdiction (under 28 USC §1651) to decide this Motion; where under 18 USC §3582(c)(2) states the following:

In 18 USC 3582(c)(2) provides in relevant part;

The Court may not modify a term of imprisonment once it has been imposed except that, in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 USC 994(D), upon motion of the defendant, the Court may reduce the term of imprisonment, after considering the factors set forth in Section 3553(A) to the extent that they are applicable. If such reduction is consistent with applicable policy statements issued by the sentencing commission.

Petitioner is filing this Motion timely to address matters with the Court that directly effect Petitioner's case at bar, and claims of Constitutional violation of the 5th Amendment.

Subsequently, most recently in the 9th Circuit; the Appeals Court overturned the District Court's decision in the case of United States v. Sainz, (Nos. 17-10310)(9th Cir. August 12, 2019) Reversing the district court's denial

2

of a motion for a sentence reduction under 18 USC §3582(c)(2) and remanding
for further proceedings, the panel held that a district court may not sua
sponte raise a defendant's waiver of the right to file a §3582(c)(2) motion
and deny the motion on that ground.

Rather than having the Parole Commission review every Federal
Sentence focused only on an offender's rehabilitation. Congress
decided that § 3582(c) could and would enable courts to decide,
in individual cases, if "there is a justification for reducing a
term of imprisonment." Id. at 56

Congress intended for the situations listed in §3582(c) to act
as "safety valves for modification of sentences," id at 121, that
enabled sentence reductions when justified by various factors that
previously could have been addressed through the now abolished par-
ole system. This particular safety valve would "assure the availab-
ility of specific review and reduction to a term of imprisonment for
'extraordinary and compelling reasons" and [would allow courts] to
respond to changes in the guidelines." Id noting that this approach
would keep "the sentencing power in the judicary where it belongs"
rather than with a federal parole board, the statute permitted "later
review of sentences in particularly compelling situations" Id. (emp-
hasis added.)

Congress thus intended to give federal sentencing courts an equ-
itable power that would be employed on an individualized basis to
correct fundamentally unfair sentences. And there is no indication
that Congress limited the safety valve of §3582(c)(1)(A) to medical
or elderly release; if extraordinary and compelling circumstances
were present, they could be used to "justiy a reduction of an un-
usually long sentence." S. Rep. No. 98-225 at 55 56.

### NEW DECISIONS AFFECT PETITIONER'S CASE FAVORABLY

Turning next; recent decisions in (Walker) and (Maupin) address that,
legal matter(s) concerning what a covered offense is pertaining to individuals
that plead to violations of 18 USC Sections 1962(d) and 1963 alleging RICO
violations (predicates) or RICO conspiracies; that now qualifies as "covered
offenses" as recently conceded by the Government in the Fourth Circuit. The

plain language (statutory) has changed and determined that, the "Statute of Conviction," not "actual conduct" or "relevant conduct" (1); (more explanation provided in the Argument Section(s)).

(Blank on Purpose - Continued p.5)

Footnote (1): See the Walker-Maupin case(s) attached under Attachment #1 and #2

4

### III.  STATEMENT OF FACTS

Petitioner's case is straightforward as he now legally states as a
substantial fact that had he been sentenced today he would have been legally
restricted to plead to a Guideline Range less than the 20-year mandatory minimum
he (plead to) was sentenced to back in 2005. The record is clear, Petitioner
plead to what is frequently called the depiction of "First Impressions"; when
accepting RICO conspiracy - predicates that are now deemed outside (or additional)
to the covered offense. The Supreme Court's **decision** that the covered offense
is the statutory conviction and thus predicates violations also falls under
the covered offense statute and is unnecessary for defendants to plead to
predicates outside of the statute of conviction. Period!

Petitioner's plea agreement (and acceptance of the plea) on the RICO
conspiracy (and predicates) pursuant to 18 USC Sections 1962(d) and 1963(A)
is structural error requiring automatic reversal under plain error review
due to being unconstitutionally vague, when applying recent decision in (U.S.
v. Davis) No. 18431. In addition, recently in the (5th Cir.) in (U.S. v. Jones)
No. 18-30256 agreed (similar to Petitioner's claims herein) that, RICO
conspiracy was not (is not) a crime of violence; that could sustain a 924(c)
conviction (and alike); thus charges of conspiracy to murder and murder, and
extortion conspiracy, etc., cannot stand. (2)

Unlike (Jones), Petitioner did not go to trial; however, the case is
exactly the same matter at hand; while Petitioner's Indictments included supposed
drug and violent crimes, the offense paired with the 924(c) cases were "in
aid of racketeering" (language from Vicar), thus suggesting a connection
between the conduct underlying each offense and the RICO (predicate) part

---

Footnote (2): As described in the Court's recent denial of Petitioner's Compassionate
Release Petition; Petitioner's violation predicates included (RICO-Vicar)
extortionate collection of credit conspiracy, illegal gambling and the other
two charges listed above.

of the conspiracy. (See Attachment #3 - the Jones Case and Opinion). The Court found that the offenses  was invalid crime of violence predicate and the convictions, underlying the element chargs must be vacated immediately. Petitioner now makes the same claims; along with other new cases herein this Motion in support for Relief.

Accordingly, upon review of Petitioner's sentencing transcripts, the Court adopted an incorrect PSR report; that now cannot stand based on new changes in caselaws. The record provides clear proof that Defense Counsel did object to some claims within the PSR Report of proffered Govt. claims; (that was adopted by the Court) that Petitioner had no involvement in concerning many of the supposed predicates listed in the indictment, again adopted by the Court.

Simply put; based on new charges in the rulings of the Supreme Court (and the language change determined by the Higher Court) Petitioner should not (could not) have plead to predicate violation within RICO conspiracy; nor any "relevant or actual conduct" concerning the RICO conspiracy as a whole (outside or inside) of the Enterprise RICO Conspiracy Statute itself. Again; recently the Govt. has conceded to this fact in multiple district cases across the country, therefore; the Govt. cannot claim that such language change (determination) would not have any bearing on Petitioner's case at bar. (See Attachment #8 (U.S. v. Sterling) concerning the violation of using an incorrect PSR Report.)

## IV. ARGUMENT(S)

Based on the Court's Memorandum & Order (denial notice) of Mr. Urso's Compassionate Release Petition; the Court explains several reasons why the Court would not Grant Petitioner relief even at the age of 83, stating things such as:

1) No jurisdiction or authority to address the Elderly Home Detention Pilot Program (as cited above);

2) Petitioner not proving he exhausted all his remedies at the BOP, where he is currently incarcerated;

3) Petitioner is not eligible for a modification under §3582(c)(1)(A);

4) Petitioner has not demonstrated extraordinary and compelling reasons that warrant a reduction;

5) Petitioner has not demonstrated that he is not a danger to the safety of any other person or to the community (citing 18 USC §3142(g) and (inter alia);

NOTE: The Court then states, "Here, the Court is unable to conclude that Petitioner no longer presents a danger to the community"...."(3) based on prior predicates; and;

6) The Court cites the four (4) RICO predicates as it reasons and serious nature in which still stands...(I.e. the Court's first (and still remaining) impression that as a matter of law cannot stand or used for further consideration at proceeding sentences and if done is a violation of Petitioner's 5th Amendment Rights.

Petitioner's argument is clear; he plead to stipulation of facts on unknown claims not presented to a Jury, that now must be removed and a complete resentence is required to correct the record; along with the Court correcting what is now an illegal sentence.

DISCUSSION(S):

A) Mr. Urso now qualifies for Relief pursuant to (Walker) and (Maupin) and (Jones)(and alike); concerning what a covered offense language pursuant to a RICO statute.

Footnote (3): Petitioner will address the four (4) factors specifically in the discussion section

Petitioner's indictment (and plea) deals with charges and enhancements that are now deemed illegal due to the change of the language that the Govt. has concerned to in the case in US v. Maupin, no. 19-6817 concerning covered offense that is now determined by the statute of conviction, not "actual conduct or relevant conduct". (4th Cir.) Petitioner plead to charges (predicates) of the RICO alleged crimes never proven that he could not have plead to based on the change of the language that the Supreme Court has now ruled on in Petitioner's favor. The court concluded that relevant conduct not presented to a jury may not be used to enhance a defendant beyond the finding of a jury. Period! (Please see Rosales-Mireles v. U.S., 138 S.Ct. No. 1897 (2018); also US v. Antonucci, 67 Fed. Appx 121, 2016 US App. Lexis 11396).

The Supreme Court recently ruled that a "covered offense", is determined by the "Statute of Conviction", and not "Actual Conduct" or "relevant conduct" (Please see...In (U.S. v. Walker) No. 95-Cr-101 (NDNY) Oct. 25, 2019; the court using extremely informative and instructive information now being cited in vast majority of lower Courts resulting in multiple resentencing to TIME SERVED of individuals sentenced harshly and needlessly at the time of sentencing that now needs correcting.

Accordingly, the Government offices around the Country conceded that a covered offense in violation of 18 USC §§1962(d) and alleging RICO violations or RICO conspiracies is; the plain statutory languages and the Supreme Court precedent makes clear that a covered offense is determined by the statute of conviction, not actual conduct or relevant conduct. (See US v. Maupin) No. 19-6817 and 4th Cir. decisions on appeal in favor of Maupin).

Again; of great legal consequence is the fact that, similar to cases cited above, Petitioner was sentenced (by way of a plea); and then resentenced pursuant to a RICO case of many charges never proven to have committed.

Petitioner argues herein this motion, what Supreme Court clearly determined to be illegal to use (wherein a RICO case in violation of 18 USC Section 1962(d) and (1963)(and alike other predicates) as a qualifier for covered offenses; specifically speaking, that covered offenses is clearly a statute of conviction violation and thus, the Govt. cannot use claims of supposed violations proffered of an individuals supposed or alleged conduct (actual) or relevant conduct as enhancements to create a harsher sentence.

Also the court cannot overlook the recent decisions in (U.S. v. Matthews, et. al) Nos. 16-2027/2089)(3rd 2019).

Subsequently, Petitioner was sentenced on a calculation of applicable guidelines range used that was in plain error as stated in (Molina-Martinez v. US) 136, S.Ct. 1338, 1344 (April 20, 2016).

The High Court held that a sentencing procedure that begins with an incorrectly calculated Guidelines Level is infected with plain error and requires resentencing, even when there was no objection by defense counsel to the Guideline calculation.

B) Mr. Urso's RICO predicates involving murder or conspiracy
   to murder also cannot stand and must be removed based on (Davis).

In Davis, the case is simply, the predicate of a crime of violence is now unconstitutionally vague and cannot stand. In addition, based on the language change in (Maupin case), Petitioner could not have plead to the predicates nor the state statutes based on the alleging RICO violations (the individual predicates) or RICO conspiracies....Davis is about how the Govt. was mis-utilizing the 924(c) charges and the Judge makes a point when he stated below:

"What the Govt. (should not fail to recognize), is the opinion cited by Justice Gorsuch that states: Furthering, the way the 924(c) statute is being used to stack longer sentences, that even the Govt. admits that the statute language (also while using to enhance those not directly charged with a 924(c) offense) provides no reliable way to determine which offense qualify and cannot be squared with the statutes text, context, and history of the 924(c) statute. Concluding with "were we to adopt the Govt's claims of usage for the 924(c)(3)(B) (along with unfounded or outside of the Indictment charges) we would be effectively stepping outside our rule as judges and writing a new law rather than applying the one Congress adopted."

Concerning the 924(c) charges Petitioner plead to, the violation may not, as a matter of law, receive an enhancement under USSG 2D1.1(b)(1)...(also see USSG 2K2.4 Application Note 4, stating simply that a defendant cannot be both charged ith a 924(c) charge and be enhanced at the same time. The indictment clearly proves that Petitioner was both charged and plea'd under the 924(c) element clause, and sentenced as an enhancement under the RICO predicates charges plead to. (See US v. McNair); No. 16-CR-666-(KMK))(2nd Cir).

(Davis Case) includes conspiracy to RICO Cases

Distinctly decided in the 9th Circuit, pursuant to a 924(c) second-degree murder (claim/charge or enhancement) in (US v. Davis), S.Ct. 2319 (2019); of violence under the residual clause and defendant's conviction (or enhancement at sentencing) cannot stand due to the additional legal fact, because second-degree murder is not categorically a crime of violence.

(See Attachment #4 the Campbell Case for crime of violence issue)

The government pointed out that Mr. Maumu's request is unlike the majority of compassionate release requests because Maumau is not suffering from medical or age-related physical limitations. But the court was not unpersuaded, citing a DOJ Inspector General's report stating that:

"although the BOP's regulations and Program Statement permit non-medical circumstances to be considered as a basis for compassionate release, the BOP routinely rejects such requests and did not approve a single nonmedical request during the 6-year period of our review."

The court stated that the BOP had the power to provide compassionate releases when sentences are "unusually long: but the Bureau of Prisons declined to seek relief in these situations. Congress responded by eliminating the BOP's gate keeping function.

The court also stated that in Cantu-Rivera, 1:05-CR-458-1, 2019 WL 2498923 at *2 (S.D. Tex. June 17, 2019), the court took the incarcerated person's sentence into account. The court also noted the same in Brown 4:05-CR-00227-1, 2019 WL 4942051 at *3 (S.D. Iowa Oct. 8, 2019).

Finally, the court cited Ukrevich, 8:03-CR-37, 2019 WL 6037391, where the district court determined that a sentence modification based on the FIRST STEP Act's changes to 924(c) sentencing was appropriate. While the government objected, indicating that congress could have made 924(c) retroactive but chose not to, the court here said that

"It is not unreasonable for Congress to conclude that not all defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve some defendants of those sentences on a case-by-case basis. As just noted, that is precisely the approach taken by the Urkevich court."

The court determined that a combination of factors including Mr. Maumau's age at the time of the sentence, the incredible length of the sentence imposed and the fact that if sentenced today he would not be subject to such a long term of imprisonment all established the extraordinary and compelling reason to reduce Mr. Maumau's sentence.

Finally, the court determined that the 3553(a) factors had to be considered in order to determine what type of new sentence would be appropriate. Further the court determined that although this section of the law is a "compassionate release," that the court could reduce his sentence and keep him in prison the same way that Ukrevich's case was resolved:

("If this Court reduces Urkevich's sentences on Counts III and V to 60 months each, consecutive, he will not be eligible for immediate release. His sentence would total 368 months, and he would have served somewhat more than half that sentence. Nonetheless, the Court does not consider the Motion premature. . .. A reduction in the sentence at this juncture will help Urkevich and the Bureau of Prisons plan for his ultimate release[.]").

The court set the case for a hearing in April where Maumau could present his arguments regarding what would be an appropriate sentence. Maumau was ordered to meet with probation for the preparation of a Presentence report "that addresses Mr. Maumau's character, his danger to the public, his likelihood of rehabilitation or recidivism, the type of sentence he likely would have received had he been charged and convicted after the First Step Act had been passed, and any other relevant considerations." United States vs. Maumau, 08-cr-00758

(See Attachment #5 other highlights of importance in this groundbreaking case)

C) Mr. Urso should qualify for Compassionate Release
based on the "catch all" provision"

Petitioner now further presents recent

District of Utah case in (U.S. v. Maumau) No. 08-CR-00758 (2020) decision

granting relief pursuant to 3582 "Compassionate Release" claims.

Another Opinion Finds Statutory Reform among "Extraordinary and Compelling Reasons" for Reducing Sentence under § 3582 (c)(1)(a)
In United States v. Maumau, (No. 2:08-cr-00758-TC-11) (D. Utah Feb. 18, 2020), U. S. District Judge Tena Campbell provided an extended, thoughtful review of recent compassionate release jurisprudence and the changes to § 3582(c)(1)(A) brought by the FIRST STEP Act.

As background, Defendant Maumau was sentenced to 57 years in prison for Racketeering Conspiracy, Hobbs Act Robbery and Assault with a Dangerous Weapon. The sentence was later reduced to 55 years following an appeal. Now, after having served approximately ten years in prison, Maumau filed a motion to reduce his sentence under 18 U.S.C. § 3582(c)(1) (A).

The court determined that there three questions that had to be resolved: does the court have the discretion to provide relief, should the court exercise that discretion to modify Maumau's sentence and if Mr. Maumau is an appropriate candidate the how much should his sentence be reduced by.

The court first determined that they do have the discretion to provide relief. The court determined that under the existing sentencing commission policy the court did not have the discretion to grant release. However, that policy has not been updated since the passage of the FIRST STEP ACT and that it was unlikely to be updated soon given that the commission cannot amend their guidelines (the commission only has two voting members and needs 4 in order to amend their policy and guidelines).

The sentencing commission's policy currently indicates that a court can only grant a compassionate release "upon motion of the director of the Bureau of Prisons." The guidelines then outline 4 situations where relief us appropriate. The last situation is a "catch-all" provision. Mr. Maumau was seeking relief under that catch all provision. Maumau further argued that because the First Step Act now allows EITHER the director OR the defendant to file a motion for compassionate release that the catch-all provision's portion stating that relief could be granted "upon motion of the director of the Bureau of Prisons" is now inconsistent with the law. The court noted that "a majority of district courts to consider the question have embraced Mr. Maumau's position [.]" The court cited Cantu, Beck and the other cases that reflect this (we covered this case in a prior newsletter titled "Compassionate Release and The Meaning of "Extraordinary and Compelling Circumstances" in 3582." Your loved ones can send that article to you at https://www.gordondefense.com/3582-924c-compassionaterelease/ ).

The cases that the government presented that indicate that the Sentencing Commission's policy remain binding. The court stated that those cases "address[ed] compassionate release requests that were based on subdivisions A through C of the Sentencing Commission's policy for medical condition, age, or caregiver status but did not discuss the catch-all provision in subdivision D, which is at issue here."

The court went on to note that one of the express purposes of the First Step Act was to "increase[e] the use and transparency of compassionate release" and continuing to give the Bureau of Prisons Director a veto over those requests would defeat that goal.

The court then decided whether Mr. Maumau was entitled to relief. The court determined that "Mr. Maumau was 20 years old when he was arrested and was 24 years old when he was sentenced." The court also indicated that they were concerned regarding the length of that sentence, having agreed with Maumau's attorney about the unjustness of the mandatory sentence back at his original sentencing. The court previously submitted a letter to the US Attorney urging him to correct this injustice in Maumau's case.

The (Maumau) Case; alone with a vast majority of cases similar to Petitioner's claims in his previous 3582 petition; as well as in his First Step Act Petition, asserts claims that should be heard pursuant to both the First Step Act and under §3582 statute; and significantly proves Mr. Urso also now qualifies for relief under the Compassionate Release criteria.

> D. Mr. Urso now faces inadequate care-- facing potential terminal illness due to the coronavirus global pandemic; thus causing extremely extraordinary and compelling circumstance.

Previously, Petitioner provided part of his medical consultation report, that clearly shows that he has "acute respiratory infection and chronic kidney disease". These two conditions are what is specifically killing thousands of people around the world (See Attachment #6) as reported at the time of this filing.

As of last night, the coronavirus (COVID-19) has sickened over 100,000 people worldwide. More than 3,300 people have died. Cases in the US have approached 500, with 20 deaths. The Marshall Project reported that it is only a matter of time before the virus reaches BOP facilities.

To minimize spread, the Centers for Disease Control and Prevention suggests avoiding close contact with people who are sick, covering your mouth with a tissue when you cough or sneeze, disinfecting frequently-used surfaces and washing your hands or using alcohol-based hand sanitizer. But these recommendations run up against the reality of prison life. Access to toilet paper or tissues is limited, there is no alcohol-based sanitizer, and you live on top of hundreds of people, meaning a virus like COVID-19 will spread like a prairie fire.

"COVID-19 will remind us of a central hypocrisy in our approach to health behind bars," The Hill reported last week. "We've built the world's largest collection of jails and prisons, and kept the health services in these places remarkably separate from the rest of our national health systems. The CDC, state departments of health, the Joint Commission and other bodies that promote

## THE OUTBREAK IS REAL AND DEADLY:

With about 40 percent of incarcerated people suffering from a chronic health conditions, the overall health profile of people in jails and prisons is abysmal. And the older prison population is among the most vulnerable to severe complications from Covid-19. There are 274,000 people aged 50 or older in state and federal prisons in the United States. If this group were separated from the rest of the U.S. prison population, they would be the seventh-largest prison system in the world. These inmates have a number of maladies that play right into the hand of the virus.

Most importantly, aging people in the federal system who are released after serving long sentences have a recidivism rate close to zero. Federal Courts should consider a one-time review of all elderly or infirm people in prisons, providing immediate medical furloughs or compassionate release to as many of them as possible.

Lowering the population of prisons and jails is the simplest and most effective way to disrupt the transmission of COVID-19. Our clients and other incarcerated individuals   along with the correctional officers, and contractors who spend their days moving between prisons and the public   are in grave and imminent danger. Congress can and should get involved ASAP by enacting emergency legislation that could, for example, give BOP discretion to release any and every prisoner that has been scored at low-risk under the FIRST STEP Act's new risk tools.  We urge the BOP to utilize its existing authorities under the First Step Act and Second Chance Act to maximize the use of community corrections and compassionate release. Or, perhaps better yet, Congress could authorize the creation of a new "emergency agency" tasked with immediately devising the most effective and humane and just way to reduce the number of persons in the federal system  now seemingly subject to having a jail or prison sentence turned into a possible death sentence by COVID-19.

Federal judges can and should be proactive here as well. In addition to re-calibrating their 3553(a) sentencing factors analysis given the reality of prison life, judges should sua sponte reconsider any and all past denied compassionate release motions because times surely have changed.  We think every single federal prison has an argument that the coronavirus has created "extraordinary and compelling reasons" that warrant a sentence reduction. We are hopeful and sense some federal judges and prison officials are already working on COVID responses in various scattered ways -- in part because everyone realizes that it is essential for the health of federal prison workers, as well as for prisoners, for there to be smart efforts to reduce prison populations amidst this global pandemic.

### E) Mr. Urso now Qualifies for new Disparity in Sentencing:

It must not be understated, when imposing a Federal sentence (or resentence) disparities; District courts must also consider "the need to avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct." (18 USC §3553(A)(6). (See Kimbrough v. U.S.), 261 F.3d 348, 2001 Appx. LEXIS 18480 (3rd Cir. 2001).

Of great importance; a review of the discrepancies that arose (at sentencing and/or resentencing) when the sentencing courts did not look at the actual participants in the crime (because others had not been sentenced yet) in determining role reduction, regardless if co-defendants not having similar records, applies to Petitioner in comparison to other co-defendants, where in summary is as such:

Some courts "assessed" a defendant against a hypothetical average participant. See, e.g. U.S. v. Teeter, 257 F.3d 14, 30-31 (1st Cir. 2001)(writing that a defendant must demonstrate that he is both less culpable than most other participants in his crime and also less culpable than the majority of those within the universe of persons participating in similar crimes).  In the Ninth and Seventh Circuits, however, the "relevant comparison" was between the defendant and other actual participants in the same crime. See, U.S.S.G.App.C.Amend. 794; U.S. v. Rojas-Millan, 234 F.3d 464, 473 (9th Cir. 2000); U.S. v. Davis, 938 F.2d 744, 747 (7th Cir. 1991).

At sentencing; the Govt. made claims that Petitioner was somehow more culpable than the majority of other co-defendants. However, these claims are simply not consistent with those who were sentenced to the exact charges of Conspiracy to Commit Bribery (pursuant to 18 USC 371) and Bribery (pursuant to 18 USC 201(b)(2)(A)(C) and their activities of the offense of the crime; now post facto of others being sentenced.

The Record proves that Petitioner's co-defendant's received an average of 15-years (imprisonment) sentence. What's more, now based on the <u>language changes of statutes</u>; in which Petitioner plead to pursuant to RICO Conspiracy, Petitioner's Guideline Range and Plea and Acceptance of Responsibility would be substantially lower.

Of legal consequence; the vast majority of lower courts have held that Section 3553(a)(6) is aimed at eliminating national sentencing disparities among co-defendants. <u>United States v. Quinn</u>, 359 F.3d 666, 682 (4th Cir. 2004); <u>United States v. Withers</u>; 100 F.3d at 1149, the Fourth Circuit explicitly stated:

> To base a defendant's sentence on a co-conspirator's sentence is a short-sighted approach which ignores the Guideline's attempt to eliminate unwarranted sentencing disparities nationwide. The Guideline goal of national sentencing uniformity is not aimed only at the particular criminal conduct that co-conspirators may share, but also addresses other factors that often vary between co-conspirators like acceptance of responsibility and assistance to the government. ID. at 1149.(1)

In a recent Second Circuit case of <u>United States v. Jenkins</u>, 854 F.3d 181 (2d Cir. 2017), the appeals court reversed a within-guidelines sentence as a substantively unreasonable sentence where the district court neglected to consult readily-available sentencing statistics from the US Sentencing Commission. In <u>Jenkins</u>, the Second Circuit held that the sentence that the district court imposed, based on the irrationality of Section 2G2.2, created the type of unwarranted sentence disparity that violates Section 3553(a)(6). The Court found that the Commission's statistics were readily available to the district court at the time of sentencing to allow for a meaningful comparison of the defendant's conduct in <u>Jenkins</u> with that of similarly-situated defendants nationwide.

In the instant case, Petitioner's counsel should have submitted, and further should have argued from the content of, a national sentencing disparity report compiled by the US Sentencing Commission. Petitioner's counsel should have highlighted defendants who were similarly-situated to the Petitioner.

This information, had it been presented by Petitioner's counsel at sentencing, would have certainly demonstrated that there is a reasonable probability that his 240-month sentence was extremely excessive as to the other defendants convicted of the same offense when properly applying deductions. The conduct of Petitioner's counsel expressly rendered the result of the sentencing hearing unreliable and deficient, undermining confidence in the outcome of the sentencing hearing.   (See Attachment #7, the full criteria for modification consideration of an imposed term of incarceration).

What really establishes Petitioner's counsel's performance as falling below an objective standard of reasonableness is counsel's failure to address (properly) sentencing disparity. Every circuit court to address the subject of sentencing disparity has concluded that to "base a defendant's sentence on a co-conspirator's sentence is a short-sighted approach, and that the Guideline's goal is national sentencing uniformity across the country."

See United States v. Joyner, 924 F.3d 454, 460 (2d Cir. 1991); United States v. Parker, 462 F.3d 273, 277 (3d Cir. 2006); United States v. Whithers, 100 F.3d 1142, 1149 (4th Cir. 1996); United States v. Simmons, 501 F.ed 620, 623 (6th Cir. 2007); United States v. Saeleurn, 504 F.3d 1175, 1181 (9th Cir. 2007); and United States v. Williams, 980 F.3d 1463, 1467 (DC Cir. 1992).

All these circuit courts clarify that: the goal of the US Sentencing Commission was to eliminate unwarranted sentencing disparities nationwide.

In summation, Petitioner's counsel could have easily consulted the national statistics concerning defendants who were similarly situated. as Petitioner. These statistics are readily available on the US Sentencing Commission website. As the record demonstrates, however, Petitioner's counsel made no attempt whatsoever to investigate what the national average sentence defendants have (as a whole) been receiving for the past five years for Petitioner's crime. If properly investigated and further advocated at sentencing, Petitioner's counsel could have very well secured a substantially lower sentence for the Petitioner, in conformity with the national average, when applying all deductions that would have been applied if not for ineffective assistance of counsel. Also, Petitioner must be sentenced in line with other co-defendants by law!

F) Mr. Urso should now be reconsidered under 3553(A) factor(s) and receive a reduced sentence would be "sufficient" to fulfill the goals of sentencing.

The question remains whether, considering the factors present in 18 USC §3553(a), the sentence should be reduced. Three circumstances differ from those before the Court in        . Mr. Urso has, by any standard, served a long sentence. He is older and statistically less likely to commit a new offense, and his good conduct and efforts at improving himself show him to be more mature and responsible than he was 17 years ago.

As the Judge Stafford recognized recently in another First Step Act case, older individuals are less likely to commit new offenses:

> The Sentencing Commission has found that "age is generally a strong factor influencing the likelihood of committing crime," with "older offenders...substantially less likely than younger offenders to recidivate following release." US Sentencing Comm'n, The Effects of Aging on Recidivism Among Federal Offenders, 11, 30 (2017), http://www.ussc.gov/research-reports/effects-aging-recidivism-among-federal-offenders. Davis is now fifty-one years old, an age when recidivism rates decline substantially.

Order Granting Defendant's Motion for Reduction in Sentence (March 6, 2019), United States v. Davis, N.D.F.L Case No: 4:92cr4013-WS ECF 2248 at 12.

Mr. Urso's post-sentencing conduct is relevant to the Court's decision. "Evidence of post-sentencing rehabilitation may be highly relevant to several of the §3553(a) factors that Congress has expressly instructed district courts to consider at sentencing." United States v. Pepper, 562 US 476, 491 (2011). It may "be pertinent to "the need for the sentence imposed' to serve the general purposes of sentencing set forth in §3553(a)(2)--in particular, to 'afford adequate deterrence to criminal conduct,'..." Id. "Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under §3553(a) to 'impose a sentence sufficient, but not greater than necessary,' to comply with the sentencing purposes set forth in §3553(a)(2)." Courts have routinely considered since evidence in the context of the First Step Act resentencings. See, e.g. United States v. Rose, 379 F.Supp.3d at 233 (recognizing that "the most recent evidence of the defendant's life and characteristics...may be the most probative information available, when deciding whether a defendant should continue to be incarcerated or, in some cases, be immediately released");

United States v. Hadley, 389 F.Supp.3d 1043, 1049 (MD.Fla 2019)(finding that the defendant's efforts to obtain a GED and/or coursework and "efforts to better himself" supported the court's decision to impose a below-guideline sentence"); and United States v. Mitchell, No. 05-00100, 2019 WL 2647571, *8 (D.D.C. June 27, 2019)(relying in part, upon the defendant's absence of disciplinary infractions to impose a sentence of time-served).

### CONCLUSION

The argument set forth above is essentially an argument of first impression. This Circuit has before determined whether a defense counsel's failure to research what the national average sentence imposed for similarly-situated defendants, or failure to argue such information at sentencing, would constitute a violation of a defendant's constitutional rights.

For example, if the US Sentencing Commission's statistical analysis of previously sentenced defendants determined that the national average was substantially lower than what the presentence report guideline had determined for a certain defendant, then that defendant would be explicitly prejudiced by his counsel's failure to bring the national average sentence to the court's attention during the sentencing proceeding. It would clearly be up to the court whether to impose a guideline sentence or impose a sentence that comports with the national average. Yet, eliminating that option from the court's discretion would most certainly prejudice the Defendant. After all, it is a defense counsel's responsibility to present all viable sentencing options to the Court, and failure to do so would unquestionably show that counsel's performance was deficient, falling below an objective standard of reasonableness. If it were not for Petitioner's Counsel's unprofessional errors, the result of the sentencing hearing in this case would have been different.

As a matter of new law, Petitioner must be resentenced in accord with his co-defendants and the National Average (whichever is the most favorable today); in thus, reflective of the correct offense Petitioner could have plead to regarding the statute of conviction (only) and not anything concerning actual or relevant conduct of supposed acts never proven or provided to a jury.

WHEREFORE, Anthony Urso, Petitioner acting pro se, humbly requests that this Honorable Court Grant this Motion for a Modification of his sentence, in line with what should have been in the Guideline Range of 15-years (at

(worst), thus changing his Guidelines downward by at least (60) months/(5-years); and based on the 17½ years Petitioner has currently served; Petitioner now qualifies for <u>Time-Served</u>. Additionally; the extra time already served, as per the First Step Act of 2018, those extra months "must" be deducted from Petitioner's Supervised Release pursuant to (US v. Venable)(4th Cir.) and alike. The Court levied a 3-year probation term, that now also must be reduced as a matter of Congressional law.

PETITIONER CITES THE FOLLOWING REASONS FOR RELIEF:

1) Based on recent 9th Cir. Decision in (U.S. v. Sainz) No. 17-1030; stating that the district court "may not" sua sponte raise (or bypass) a defendant's rights to file a §3582(c)(2) motion and deny the motion on that ground (because the Govt. simply asks the Court to) is a violation of an individual's constitutional rights.

2) Congress recently decided that 3582(C) could and would enable courts to decide in individual cases, if there is a justification for reducing a term of imprisonment to act as a safety valve for modification of sentences.

3) The language change pursuant to RICO conspiracy in which Petitioner plead to under 1962(d) and 1963, creating an incredibly harmful First Impression, that continues to be used today to justify its recent denial decisions. (U.S. v. Maupin, and Walker).

4) New compelling and extraordinary circumstances causing potential deadly illness due to the <u>coronavirus outbreak</u> and lack of appropriate care by the BOP.  (And)

5) The need to avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct (Kimbrough) as well as; in the Interest of Justice; (See Ceylar v. Sullivan), 446 US 335, 64 L.Ed.2d 333, 100 S.Ct. 1708 (1980), finding the courts must apply fair treatment of people and proper administration of the laws, and a motion and/or Notice that it (<u>like Petitioner's case</u>) is exceptional

circumstances (i.e. <u>finding the Court did in fact over-sentence an</u> <u>earlier defendant much more harshly than other co-defendants</u>) makes it desirable for the Court to apply equitable relief for similar charges and conduct of individuals within the same criminal activity. Such relief requested would allow Petitioner equitable punishment afforded to other co-defendants; Petitioner requests the <u>Granting</u> of this Motion for legal as of law relief; and any further relief this Court deems necessary in the Interest of Fairness and equal Justice.

Dated: _____April 1^st_____, 2020          Respectfully Submitted,

Anthony Urgo, pro se
Fed. Reg. No.# 64109-748
LSCI Allenwood-LOW
PO BOX 1000
White Deer PA 17887

AFFIDAVIT

I Hereby Certify that the foregoing facts are true and correct to the best of my knowledge and belief under penalty of perjury as per 28 USC Section 1746.

_____
Anthony Urso,  Pro Se

CERTIFICATE OF SERVICE

I Hereby Certify that a copy of the foregoing Petition/Motion was mailed on this _2ND_ day of _April_____, 2020, by First Class Mail, postage prepaid to:


Office of the US Attorney
_271 CADMAN Plz E_____
_U.S. DOJ_____
_BROOKlyN, N.Y. 11201____


_____
Anthony Urso, pro se

ATTACHMENT(S)

## NOTE: UPDATE ON (U.S. Walker), No.-19-373

### DISTRICT COURT CUTS LIFE SENTENCE FOR CRACK CCE

Eleven months ago, the First Step Act authorized retroactive application of the Fair Sentencing Act to reduce pre-2010 crack sentences. DOJ says that 1,987 people have gotten sentence cuts, but as I noted last week, the government has dug in its heels on many more movants, arguing that crack prisoners should be dinged with every gram of drug and Guideline enhancement, old or new, that could possibly apply.

That's why a recent NDNY district court Fair Sentencing Act decision to reduce a defendant's life sentence to time served is so heartening.

In 1997, Tommy Walker was convicted of a continuing criminal enterprise, and sentenced to mandatory minimum life, imposed because the CCE involved more than 300 times the "5 grams or more" quantity of cocaine base penalized in 21 USC 841(b)(1)(B). If the Fair Sentencing Act had been in effect at the time, the quantity of cocaine base penalized in 21 USC 841(b)(1)(B) would have been 28 grams or more, meaning that to get a life sentence, Tommy would have had to be involved with 8.4 kilograms, far more than the 1.5 kg found in the presentence report.

True but irrelevant, the Government said, because the guidelines enhancements that would have applied to Tommy under current law even if the mandatory minimum life sentence did not apply ¬ would put him in the 360-to-life guidelines sentencing range, so his life sentence should stand.

The district court rejected the government's premise, noting that one of the enhancements it wanted applied maintain a premises for drug distribution did not exist when Tommy was sentenced. Even if it had, maintaining a drug premises "was not an element of the charged crimes and did not affect Defendant's original sentence, and therefore, he would have had little reason to contest it."

It helped that Tommy had served more than the minimum sentence under his 292-360 month range, is 62 years old, and had completed his GED, taken extensive educational courses, and excelled at jobs including electrician, law library clerk, and hospital companion, earning strong endorsements from various prison officials. He has also served as a mentor to other prisoners, who have submitted testimonials on his behalf. In short, Defendant has used his time in custody to better himself and help others."

In Tommy's case, the court said, "a reduced sentence is consistent with the purposes of the First Step Act and Congress's intent to remedy the disproportionate impact of the statutory penalties applied to crack cocaine offenses prior to 2010, and to eliminate the disparity between Defendant and those sentenced thereafter." The judge re-sentenced Tommy to 340 months, which was time served, a sentence that reflected "the severity of the crimes committed by Defendant, while recognizing his efforts at rehabilitation.".

Don't underestimate the power of a good disciplinary and programming record.

Memorandum Opinion and Order, US v Walker, Case No. 95-CR-101 (NDNY, Oct. 25, 2019)
><>

Attachment #1

---

**UNITED STATES OF AMERICA, Plaintiff - Appellee v. CLAIBORNE LEMAR MAUPIN, Defendant -**
**Appellant**
**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**2019 U.S. App. LEXIS 27180**
**No. 19-6817**
**September 9, 2019, Filed**

---

**Editorial Information: Prior History**

{2019 U.S. App. LEXIS 1}(3:04-cr-00047-NKM-18).<u>United States v. Maupin</u>, 2019 U.S. Dist. LEXIS 133943 (W.D. Va., June 3, 2019)

**Counsel**                    For United States of America, Plaintiff - Appellee: Jennifer R. Bockhorst, Assistant U. S. Attorney, Office of The United States Attorney, Abingdon, VA.
                    For Claiborne Lemar Maupin, Defendant - Appellant: Lisa M. Lorish, Office of The Federal Public Defender, Charlottesville, VA; Juval Orisha Scott, Federal Public Defender, Office of The Federal Public Defender, Western District of Virginia, Roanoke, VA.

**Judges:** Judge Wilkinson with the concurrence of Judge King and Judge Harris.

**Opinion**

ORDER

Upon consideration of the government's unopposed motion to remand, the court grants the motion, vacates the district court's order, and remands this case to the district court to consider whether to reduce appellant's sentence under the First Step Act in the exercise of its discretion. The clerk is directed to attach a copy of the motion to remand to this order and transmit a copy of both to the district court.

Entered at the direction of Judge Wilkinson with the concurrence of Judge King and Judge Harris.

**UNITED STATES' MOTION TO REMAND**

The United States of America, by counsel, hereby moves the Court, pursuant to Federal and Local Rule of Appellate Procedure 27, to vacate the order of the district{2019 U.S. App. LEXIS 2} court and remand to that court to determine whether to reduce Maupin's sentence in the exercise of its discretion.

**Factual Background**

A. <u>Maupin's Conviction</u>

Claiborne Lemar Maupin pled guilty on April 10, 2006, to Count Three of the Superseding Indictment, participating in a Racketeering Influenced Corrupt Organization (RICO), in violation of 18 U.S.C. §§ 1962(d) and 1963. JA at 68. The charge alleged a RICO conspiracy whose purposes included attempted murder, kidnapping, robbery, and trafficking in cocaine base, heroin, phencyclidine (PCP), and marijuana. JA at 37. The "pattern of racketeering activity" alleged in Count Three "consist[ed] of

CIRHOT                                    1

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Attachment #2

[among other things] multiple acts involving offenses dealing with the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in controlled substances, indictable as in violation of [18 U.S.C. §§ 841 and 846]." JA at 51.

Maupin's role, as alleged, was to obtain and supply narcotics to other members of the organization to sell at the street level and to serve as an "enforcer" for the organization. JA at 45-46. In the "Notice of Special Findings," Count Three incorporated by reference the first four paragraphs of Count One of the Superseding Indictment, which charged Maupin and others{2019 U.S. App. LEXIS 3} with conspiracy to distribute and possess with intent to distribute 50 grams of cocaine base, 5 kilograms of cocaine hydrochloride, and detectable amounts of heroin, PCP, and marijuana. JA at 19-22, 52. Count One carried a maximum penalty of life imprisonment pursuant to 21 U.S.C. §§ 846 and 841(b)(1)(A), based upon the amounts of cocaine base and cocaine hydrochloride alleged.

Maupin pled guilty pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). JA at 68. As part of the agreement, the United States agreed to dismiss Count One, and the parties agreed the Court should impose a sentence of twenty years. JA at 69.

The maximum penalty for RICO conspiracy is determined by the maximum penalty for the racketeering activity. 18 U.S.C. § 1963(a).1 Where the racketeering activity carries a maximum of life imprisonment, the RICO maximum penalty is also life. 18 U.S.C. § 1963(a). Otherwise, the RICO maximum penalty is 20 years. *Id.*

The plea agreement and the Presentence Report in this case stated the maximum penalty for Maupin's RICO offense was life{2019 U.S. App. LEXIS 4} imprisonment and a fine of $250,000. JA at 68. The quantity of cocaine base and the quantity of cocaine hydrochloride involved in Maupin's offense each would have triggered the maximum penalty of life imprisonment under 18 U.S.C. § 841(b)(1)(A). However, the plea agreement does not contain any stipulations with regards to the Special Findings. It does not specify to which drugs or to what quantity of drugs Maupin pled-whether it was to 50 grams of cocaine base or 5 kilograms of cocaine hydrochloride, or both. JA at 68-73.

In the Presentence Report, adopted by the sentencing court without change, the only drug for which Maupin was held accountable was cocaine base, suggesting the basis for the plea was Maupin's involvement with cocaine base only. JA at 110. Whereas some defendants stipulated to quantities of cocaine hydrochloride as well as cocaine base, and others stipulated to only marijuana quantities, there is nothing in the factual recitation or the drug weight findings in the Presentence Report that establishes Maupin's involvement with a drug other than cocaine base. JA at 104-110. Maupin was found accountable for more than 1.5 kilograms of cocaine base. JA at 110. He was determined to have a total offense level of 38 and a criminal history category VI, yielding{2019 U.S. App. LEXIS 5} a guideline range of 360 months to life. JA at 118.

Maupin was sentenced on June 29, 2006, in accordance with the plea agreement, to 240 months' imprisonment. JA at 76.

On October 3, 2018, the district court granted Maupin's motion to reduce his sentence under Amendment 782 and *Hughes v. United States*, 138 S. Ct. 1765, 201 L. Ed. 2d 72 (2018), and reduced his sentence to 210 months, the bottom of the current guideline range for an offense involving 1.5 kilograms of cocaine base.

**B. The First Step Act**

The First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194, was enacted December 21, 2018. Section 404 of the Act permits the sentencing court, upon motion of the defendant or the government, or upon its own motion, to impose a reduced sentence on certain

CIRHOT                                                             2

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

"covered offense[s]" in accordance with the Fair Sentencing Act of 2010, if no such reduction was previously granted. It reads:

SEC. 404. Application of Fair Sentencing Act.

(a) Definition of covered offense.-In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) Defendants previously sentenced.-A court that imposed a sentence for a covered offense may, on motion of the defendant,{2019 U.S. App. LEXIS 6} the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) Limitations.-No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.First Step Act § 404, 132 Stat. 5222.

As is relevant here, Section 2 of the Fair Sentencing Act of 2010 effectively reduced the penalties for offenses involving cocaine base by increasing the threshold cocaine base quantities required to trigger mandatory minimum sentences under 21 U.S.C. § 841(b)(1). Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372 (2010) ("Fair Sentencing Act"). After the statute's enactment, a violation of 21 U.S.C. § 841(a)(1) must involve at least 280 grams of cocaine base, rather than 50 grams, to trigger the 10 to life{2019 U.S. App. LEXIS 7} penalty range of 21 U.S.C. § 841(b)(1)(A), and 28 grams of cocaine base, rather than 5 grams, to trigger the 5 to 40 year penalty range of 21 U.S.C. § 841(b)(1)(B). Section 3 of the Fair Sentence Act of 2010 modified 21 U.S.C. § 844(a) by eliminating the mandatory minimum sentence for simple possession.

## C. First Step Act Proceedings

On February 21, 2019, Maupin filed a motion to reduce his sentence under Section 404(b) of the First Step Act. JA at 81. He reasoned his RICO conviction is a "covered offense" because the maximum penalty was determined by the racketeering activity, which he defined as a drug conspiracy involving more than 50 grams of cocaine base. JA at 83. Because the Fair Sentencing Act reduced the maximum penalty for the racketeering activity to 40 years, he reasoned, he was entitled to a discretionary sentence reduction under the First Step Act. Id. He requested a reduction to a sentence of 139 months, a 33% reduction from the bottom of the applicable guideline range and significantly less than the 168 months he had served as of February 3, 2019. JA at 81-82.

The United States filed a Motion to Dismiss on March 12, 2019, arguing that RICO was not a "covered offense" under the First Step Act, because neither Section 2 nor 3 of the Fair Sentencing Act amended the penalties for RICO. JA at 88.

On June 3, 2019, the district court{2019 U.S. App. LEXIS 8} denied Maupin's motion, agreeing with the United States that the RICO violation is not a "covered offense":

[F]or an offense to be a "covered offense" its statutory penalties must have been "modified by section 2 or 3 of the Fair Sentencing Act" . . . The statutory penalties associated with RICO

CIRHOT                                         3

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

simply do not fit that description. *See* 18 U.S.C. § 1963(a) (effective December 1, 2009). Furthermore, it is clear that "Congress intended that a RICO violation be a discrete offense" separate and apart from any predicate offenses, and this Court will treat it accordingly. *United States v. Crosby*, 20 F.3d 480, 484, 305 U.S. App. D.C. 290 (D.C. Cir. 1994) (collecting cases holding the same, including *United States v. Arnoldt*, 947 F.2d 1120, 1125-27 (4th Cir. 1991)).JA at 95. In a footnote, the district court further held that a RICO conspiracy conviction is different from a Section 846 conspiracy. *Id.* at n.1. Section 846 states that a defendant guilty of attempt or conspiracy of a drug offense "shall be subject to the same penalties as prescribed for that offense," and "[t]his creates a clear relationship between section 846 and 21 U.S.C. § 841(b)(1), a relationship that does not exist between 18 U.S.C. § 1963 and 21 U.S.C. § 841(b)(1)." *Id.*

Maupin filed a timely notice of appeal. JA at 97.

Argument

Although the government argued in the district court that Maupin's RICO offense does not qualify as a "covered offense" under Section 404 of the First Step Act, the United States now agrees{2019 U.S. App. LEXIS 9} with Maupin that it does. The United States therefore agrees that the Court should remand this case to the district court to allow that court to consider whether to reduce Maupin's sentence in the exercise of its discretion.

The key question in determining whether a defendant is eligible under Section 404 of the First Step Act is whether the "statutory penalties" for a defendant's "violation of a Federal criminal statute" were modified by Section 2 or 3 of the Fair Sentencing Act. Thus, the court must consider whether the statutory penalties associated with the defendant's violation of a federal criminal statute would have been different had Sections 2 and 3 of the Fair Sentencing Act been in effect. A defendant therefore may be eligible even if he was convicted under a statute other than those directly amended by Sections 2 and 3 of the Fair Sentencing Act. For example, a defendant may be eligible if he was convicted of a cocaine-base offense under 21 U.S.C. § 846 (attempt and conspiracy), so long as the quantity of cocaine base involved in the offense would no longer support the same statutory penalty range.2

The same is true of a defendant convicted under RICO, provided that the defendant's statutory maximum was increased to life as a result{2019 U.S. App. LEXIS 10} of a racketeering activity involving cocaine base that would no longer carry a maximum penalty of life imprisonment. Just as the statutory penalties associated with a violation of Section 846 were "modified by" the Fair Sentencing Act, so too were the statutory penalties associated with certain violations of RICO.

Here, the statutory-maximum penalty for Maupin's RICO offense was set by reference to Maupin's cocaine-base-trafficking racketeering activity. That racketeering activity involved more than 1.5 kilograms of cocaine base-a quantity that would support the same maximum penalty of life imprisonment under Section 841(b)(1)(A) both before and after enactment of the Fair Sentencing Act. Ordinarily, the United States would argue that Maupin is ineligible for a discretionary sentence reduction for that reason. However, the United States did not preserve this alternate argument for finding Maupin ineligible. Accordingly, the only determination remaining for the district court is whether, in its discretion, to reduce Maupin's sentence, which is already within the guideline range currently applicable to his offense.

Position of Counsel

Counsel for Maupin has been contacted and has indicated he has no objection to a remand.{2019 U.S. App. LEXIS 11}

.CIRHOT                                              4

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Conclusion

For the foregoing reasons, the United States moves for this Court to vacate the district court's opinion and remand for the district court to consider whether to reduce Maupin's sentence in the exercise of its discretion.

Respectfully submitted,

THOMAS T. CULLEN

United States Attorney

*/s/ Jennifer R. Bockhorst*

Jennifer Bockhorst

Assistant United States Attorney

Tennessee Bar No. 021395

U.S. Attorney's Office

180 West Main Street, Suite B19

Abingdon, Virginia 24210

276-628-4161

276-628-7399 (fax)

USAVAW.ECFAbingdon@usdoj.gov

**Footnotes**

1

18 U.S.C. § 1963(a) reads, in relevant part:

Whoever violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment), or both . . . .
2

This interpretation of Section 404 comports with Congress's use of the broad phrase "a Federal criminal statute." Congress easily could have limited the reach of Section 404 to the five statutory provisions directly amended by Sections 2 and 3 of the Fair Sentencing Act, but it did not.

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Jones and Patterson were convicted of racketeering, drug and firearms offenses as part of their membership in a gang. Several of these convictions were 924(c) cases. Several cases were reversed for insufficient evidence. After that, they were resentenced on the remaining cases. After resentencing they appealed again, claiming Dimaya and Davis rendered their 924-(c) cases unconstitutional. While the cases were pending the Supreme Court decided Davis. Because the Supreme Court had recently decided Davis, Jones and Patterson were unable to brief it previously.

The parties agreed that Post-Dimaya and Davis, the RICO Conspiracy was not a crime of violence under 924(c). Jones and Patterson argued that because the jury may have based the 924(c) convictions on the RICO conspiracy predicate, that makes the convictions unconstitutional. They also argued that "(1) permitting § 924 convictions predicated on RICO conspiracy is structural error requiring automatic reversal; and (2) the § 924 convictions should be reversed under plain error review."

The court stated that "Structural error does not occur when a jury rendering a general verdict 'was instructed on alternative theories of guilt and may have relied on an invalid one.'" The court went on to say that was what happened in this case. Because of this court stated that their error was not structural but looked to see if they could go forward on a plain error analysis "prongs: (1) there must be an error; (2) the error must be 'clear or obvious, rather than subject to reasonable dispute'; (3) 'the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it 'affected the outcome of the district court proceedings"; and (4) the court must decide in its discretion to correct the error because it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

The court conceded parts one, two and four of the plain error analysis. The court agreed. Of particular note was the Fifth Circuit's statement that RICO conspiracy was not a crime of violence as well given that "RICO conspiracy only requires that (1) "two or more people agreed to commit a substantive RICO offense"; and (2) "the defendant knew of and agreed to the overall objective of the RICO offense."

The Davis error in the case, that being that their 924(c) convictions were ineligible post-Davis, also led to an additional life sentence for Jones and Patterson. To uphold those sentences would be "particularly egregious error[ ]" [which] would[,] therefore "cast significant doubt on the fairness of the criminal justice system[,]" and satisfied the court that the fourth prong had been met. This left the third prong of the plain error analysis, that "(3) the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it 'affected the outcome of the district court proceedings'[.]'
In order to determine if the error affected the substantial rights of the incarcerated person, the incarcerated person must "'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different[.]" The Fifth Circuit indicated that because the 924(c) convictions were "predicated on both a crime of violence and a drug trafficking crime," the court looked at "whether the jury could have convicted based only on the drug trafficking predicate." If not, because the RICO conspiracy was not a crime of violence that could sustain a 924c conviction, plain error would apply and the 924(c) charge could not stand.

The court stated that looking at the indictment was the first indicator:

"While the alleged conduct underlying the RICO conspiracy included "conspiracy to distribute controlled substances" and "distribution of controlled substances," it also included a broader range of conduct: "conspiracy to commit murder," "aggravated battery," the use of "stolen vehicles," and "protecting the power, territory and profits of the enterprise through ... aggravated

assault, robbery and murder." In addition, the indictment charged each § 924 offense alongside another offense based on the same conduct: for example, Counts 5 and 6 both arose out of the murder of Travis Arnold." Further, while the indictment included both drug charges and the violent crimes, the offenses paired with the 924(c) cases were "in aid of racketeering," language from the Violent Crimes In Aid of Racketeering Act (VICAR)," "suggesting a connection between the conduct underlying each § 924 offense and the RICO conspiracy.

The court also took note of the government's opening and closing statements where the prosecutors indicated that "[the gang] used its guns in acts of violence unrelated to its drug activity, such as protecting its gang territory or maintaining its reputation."

In addition, the verdict form has the same "in aid of racketeering" language from VICAR earlier for the offenses that were paired with the 924(c) offenses. The jury also returned the same verdicts on each § 924(c) offenses, suggesting that the 924(c) convictions were based on the RICO conspiracy predicate. "

In sum, the evidence demonstrated a "reasonable probability that the jury would not have convicted Appellants of the § 924 offenses if the invalid crime of violence predicate were not included on the verdict form." When taking all of this together, the court found that there was plain error.

The court VACATED several of the convictions and remanded the case back down for further proceedings. No. 18-30256

FOURTH CIRCUIT VACATES AND REMANDS 924(c) CONVICTION PREDICATED ON FEDERAL KIDNAPPING

United States v. Campbell, No. 15-4281 (4th Cir. Nov. 8, 2019)

Campbell was convicted by a jury of kidnapping, in violation of 18 U.S.C. 1201(a)(1), discharging a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. 924(c)(1)(A), and being a felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1). On appeal, Campbell argued that he is innocent of Count Two the 924(c) conviction because kidnapping is not a crime of violence for 924(c) purposes. He further asserted that the evidence was not sufficient to convict him of Count One because the government failed to show that he used an instrumentality of interstate commerce in furtherance of the kidnapping.

Because Campbell did not raise the 924(c) issue before the district court, the Fourth Circuit reviewed for plain error. To prevail, Campbell needed to "show (1) an error that (2) was clear or obvious, (3) affects his substantial rights, and (4) seriously affects the fairness, integrity or public reputation of judicial proceedings."

In United States v. Davis, the Supreme Court struck down the residual clause of 924(c)(3)(B). Thus, the only way a crime of violence can qualify as a predicate for 924(c) purposes if it has as an element the use, attempted use, or threatened use of violence.. 18 U.S.C. 924(c)(3)(B). More recently, the Fourth Circuit held in United States v. Walker, 934 F.3d 375 (4th Cir. 2019), that federal kidnapping did not qualify as a crime of violence under the force clause of 924(c)(3)(A). Thus, the Fourth Circuit found Campbell's conviction and sentence on Count Two to be plain error that affected his substantial rights and the fairness, integrity or public reputation of judicial proceedings.

However, the court found that the evidence presented at trial, viewed in light most favorable to the government, was sufficient enough to support Campbell's conviction on Count One.

In light of Davis and Walker, the Fourth Circuit vacated Campbell's 924(c) conviction and remanded for resentencing.

EIGHTH CIRCUIT HOLDS DISTRICT COURT ERRONEOUSLY RELIED ON PSR WHERE GOVERNMENT FAILED TO PROVE DRUG QUANTITIES

Attachment #4

Here are some excerpts from the opinion that help highlight its importance:

This Court joins the majority of other district courts that have addressed this issue in concluding that it has the discretion to provide Mr. Maumau with relief, even if his situation does not directly fall within the Sentencing Commission's current policy statement. Under the First Step Act, it is for the Court, not the Director of the Bureau of Prisons, to determine whether there is an "extraordinary and compelling reason" to reduce a sentence....

As part of the First Step Act, Congress eliminated the consecutive stacking previously required for violations of § 924(

[which had led to a 55-year sentence for the defendant for crimes committed at age 20]... When considered together, the cour is inclined to find that Mr. Maumau's age, the length of sentence imposed, and the fact that he would not receive the same sentence if the crime occurred today all represent extraordinary and compelling grounds to reduce his sentence.

The United States points out in its opposition that Mr. Maumau's request is unlike the vast majority of compassionate release requests because he is not suffering from any medical- or age-related physical limitations. But the fact that such case are uncommon does not mean that Mr. Maumau's request must be denied. First, the lack of such cases is, at least arguably, part of what spurred Congress to pass the First Step Act.... Finally, and perhaps most importantly here, at least one district cou has modified a sentence based solely on the First Step Act's changes to § 924(c) sentencing.... Like the Urkevich court, this court concludes that the changes in how § 924(c) sentences are calculated is a compelling and extraordinary reason to provid relief on the facts present here.

The United States objects to this conclusion because, it notes, Congress could have made its changes to § 924(c) retroactive but it chose not to do so. See Brown, 2019 WL 4942051 at *5. While this is a relevant consideration, it ultimately has little bearing on the court's conclusion. It is not unreasonable for Congress to conclude that not all defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve some defendants of those sentences on a case-by-case basis. As just noted, that is precisely the approach taken by the Urkevich court.

Based on the above, the court concludes that a combination of factors  Mr. Maumau's young age at the time of the sentence, the incredible length of the mandatory sentence imposed, and the fact that, if sentenced today, he would not be subject to such a long term of imprisonment  establish an extraordinary and compelling reason to reduce Mr. Maumau's sentence....

Regarding what type of sentence to impose, Mr. Maumau "urge[s] the Court to ... hav[e] him brought to the district, where he can be interviewed by Probation and perhaps have an opportunity to address the Court." (Def.'s Reply at 1 (ECF No 1744).)  The Court agrees that this is the best way for the Court to determine an appropriate sentence modification.

Accordingly, the Court sets this matter for a hearing at 2:00 p.m. on April 7th. At that time, Mr. Maumau and the Unite States will be permitted to present their arguments regarding what would be an appropriate sentence for Mr. Maumau in light c the above factors. The Court further orders Mr. Maumau, in advance of the resentencing hearing, to meet with the Probation Office, and for the Probation Office to prepare a new Presentence Report that addresses Mr. Maumau's character, his danger the public, his likelihood of rehabilitation or recidivism, the type of sentence he likely would have received had he been charge and convicted after the First Step Act had been passed, and any other relevant considerations.

Attachment #5

# Bureau of Prisons
# Health Services
# Consultation Request

| Inmate Name: URSO, ANTHONY | Reg #: 04109-748 | Complex: DAN |
|---|---|---|
| Date of Birth:  07/02/1936 | Sex:  M | |

**Consultation/Procedure Requested:**   Orthopedist

**Subtype:**   Dr. Mullen

**Reason for Request:**
78 yo WM complaining of bilateral shoulder pain and has limited ROM of both shoulders.
Patient with recurrent Left cramps and pain with numbness in lateral side of leg and perineal area. Lumbar x-ray was reported as spondylolisthesis grade I and DDD. Please evaluate.

**Provisional Diagnosis:**
Bilateral shoulder pain with decreased ROM (hx of rotator cuff)
R/o lumbar radiculopathy

**Medications (As of 06/11/2014)**
Atenolol 50 MG TAB  Exp: 04/19/2015 SIG: Take one tablet by mouth twice daily  for blood pressure
Calcium Carbonate/Vit D 600MG/400 Unit  TAB  Exp: 04/19/2015 SIG: Take one tablet by mouth twice daily
Docusate Sodium 100 MG Cap  Exp: 04/19/2015 SIG: Take one capsule by mouth each day Take with a glassful of water
Lisinopril 40 MG Tab  Exp: 04/19/2015 SIG: Take one tablet by mouth daily for blood pressure
Magnesium Oxide 500 MG Tab  Exp: 04/19/2015 SIG: Take one tablet by mouth each day
Ranitidine HCl 300 MG TAB  Exp: 04/19/2015 SIG: Take one tablet by mouth twice daily as needed
Terazosin HCl  5 MG Cap  Exp: 05/18/2015 SIG: Take two capsules ( 10mg ) at bedtime


**Allergies (As of 06/11/2014)**
Penicillins, NSAIDs

**Health Problems (As of 06/11/2014)**
Elevated prostate specific antigen [PSA], Benign localized hyperplasia of prostate NOS, Hypertension, Benign Essential, Anemia, unspecified, Loss of teeth due to caries, Other specified gastritis, Esophageal reflux, Shoulder (pain in joint, shoulder region), Acute prostatitis, Renal failure, unspecified, Constipation, unspecified, Shoulder (pain in joint, shoulder region), Other unspecified back disorders, Sciatica, Dermatophytosis of foot (Tinea pedis), Cardiac murmurs, Loss of teeth due to caries, Prostatitis, unspecified, Flatulence, eructation, and gas pain, Dental caries extending into pulp, Sleep related leg cramps, Esophageal reflux, Incisional hernia, Dermatitis due to unspec substance taken internal, Seroma complicating a procedure, Nerve pain, neuralgia neuritis, radiculitis, Acquired spondylolisthesis, Chronic kidney disease, Stage III (moderate), Acute upper respiratory infection of unspec site, Cough

**Inmate Requires Translator:**   No          **Language:** PIS  10/10
**Additional Records Required:**

**Comments:**

Pt in for eval of severe B
**Requested By:** Villa, Cesar MLP          shoulder pain. X Rays show
**Ordered Date:** 04/25/2014 12:28          severe B shoulder OA.

**Priority:**   Medically
                 Necessary - Non-
                 Emergent

PE- FF 90° Very limited IR/ER — Blat
⊕ crepitus  motor 4-5/5 — pain limited
NVI              — over —

Attachment #6

(c) **Modification of an imposed term of imprisonment.**   The court may not modify a term of imprisonment once it has been imposed except that--

    (1) in any case--

        (A) the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 USCS § 3553(a)] to the extent that they are applicable, if it finds that-

            (i) extraordinary and compelling reasons warrant such a reduction; or

            (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c) [18 USCS § 3559(c)], for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g) [18 USCS § 3142];

        and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and

        (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

    (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) [18 USCS § 3553(a)] to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

(d) **Inclusion of an order to limit criminal association of organized crime and drug offenders.**   The court, in imposing a sentence to a term of imprisonment upon a defendant convicted of a felony set forth in chapter 95 [18 USCS §§ 1951 et seq.] (racketeering) or 96 [18 USCS §§ 1961 et seq.] (racketeer influenced and corrupt organizations) of this title or in the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 801 et seq.), or at any time thereafter upon motion by the Director of the Bureau of Prisons or a United States attorney, may include as a part of the sentence an order that requires that the defendant not associate or communicate with a specified person, other than his attorney, upon a showing of probable cause to believe that association or communication with such person is for the purpose of enabling the defendant to control, manage, direct, finance, or otherwise participate in an illegal

USCS                1

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Attachment #7

enterprise.

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

FEDERAL PRISON NEWSLETTER FOR NOVEMBER 15, 2019

United States v. Sterling, No. 18-2974 (8th Cir. Nov. 1, 2019)

Sterling pled guilty to two counts of cocaine distribution and one count of conspiracy to distribute 28 grams or more of cocaine, in violation of 21 U.S.C. 841(a)(1), (b)(1)(B), (b)(1)(C), and 846.

The PSR calculated quantities of powdered cocaine and cocaine base involved in controlled buys, and the quantities of drugs and cash seized during a warrant search of a co-defendant's residence. The PSR found Sterling accountable for 168 kilograms of marijuana equivalent based on the controlled buys and seizure, which resulted in a Base Offense Level ("BOL") of 24 (U.S.S.G. 2D1.1(c)(8) calls for a BOL of 24 for 100 to 400 kilograms of marijuana equivalent). However, the PSR noted that Sterling's two co-defendants' plea agreements contained stipulations to being accountable for distributing at least 400 but less than 700 kilograms of marijuana equivalent. Sterling objected to this being included in the PSR, as it raised his BOL from 24 to 26.

At sentencing, the government produced no further evidence regarding the drug quantity. Instead, it called three witnesses who testified to an unrelated offense that occurred during the conspiracy period to underscore Sterling's criminal history. At the end of the hearing, the district court overruled Sterling's objection to the BOL of 26 based on "what was presented in the [PSR]."

On appeal before the Eighth Circuit, Sterling argued that the district court's Guidelines calculations were clearly erroneous. The Eighth Circuit agreed.

The court noted that it is the government's burden to prove the quantity of drugs for which Sterling is responsible for by a preponderance of the evidence. Further, since Sterling was charged in a conspiracy, he was liable for acts of his co-defendants that were in furtherance of the conspiracy and reasonably foreseeable. U.S.S.G. 1B1.3(a)(1)(B). In addition, the court discussed how "[w]hen the amount of narcotics seized by the government does not reflect the scale of the drug trafficking offense 'the court shall approximate the quantity of the controlled substance' and may consider, for example, 'similar transactions in controlled substances by the defendant.' U.S.S.G. 2D1.1, comment. (n.5)."

In Sterling's case, the Eighth Circuit held, "[m]any defendants have appealed estimated drug quantity findings; few have cleared the high bar of clear error review." But here, the PSR combined with the plea agreement conclusively established only a BOL of 24 based on the 168 kilograms of marijuana equivalent. As the court found, the "PSR made no attempt to quantify the 'multiple individually wrapped baggies' the undercover detective observed during five controlled buys, and the detective did not testify.

The government's sole argument on appeal is that the amount Sterling's co-defendants stipulated to was reasonable foreseeable to Sterling as relevant conduct. The Eighth Circuit found that without the co-defendants' testimony at the sentencing hearing to establish quantity and foreseeability, the government's argument was mere speculation.

Because the information contained in the PSR did not have "sufficient indicia of reliability to support its probable accuracy," U.S.S.G. 6A1.3(a), the Eighth Circuit held that the district court clearly erred in relying on the Probation Officer's unsupported opinion. The court reversed and remanded the case for resentencing.

Attachment #8

Anthony Urso / 04109-748
L.S.C.I. Allenwood-Low
P.O. Box 1000
White Deer, PA 17887



**CERTIFIED MAIL**

7019 2280 0000 7072 5174





(Attn: Clerk of Court)
United States District Court
225 Cadman Plz East
Brooklyn Heights, N.Y. 11201

Low Security Correctional ~~~~~~~~~~
Allenwood, PA 1~~~~
Date_____APR 0 2 2020
The enclosed letter was processed through
special mailing procedures for forwarding
you. The letter has neither been opened
inspected. If the writer raises a questi
problem over which this facili
jurisdiction, you may wish to i