

U.S. Department of Justice

United States Attorney
Eastern District of New York

NS:JRS
F.#2020V00754

271 Cadman Plaza East
Brooklyn, New York 11201

May 18, 2020

By ECF

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Anthony Urso
            Docket No. 03-CR-1382 (NGG)

Dear Judge Garaufis:

      The government respectfully submits this letter in response to the defendant's pro se motion for a modification of sentence, filed on April 28, 2020.  ECF Dkt. No. 1217 (the "Motion" or "Mot.").  For the reasons stated below, the Motion should be denied.

I.      Background

      A.      The Offense of Conviction

      On February 11, 2005, the defendant pleaded guilty to one count of racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d) and 1963(a), relating to his high-ranking position in the Bonanno organized crime family of La Cosa Nostra (the "Bonanno Family").  See ECF No. 345.  Specifically, from January 2003 to January 2004, the defendant was the acting boss and acting consigliere of the Bonanno Family.  See Presentence Investigation Report ("PSR") ¶ 21.  The defendant's racketeering conspiracy conviction included his guilty plea to Racketeering Act 12 (loan sharking conspiracy), Racketeering Act 22 (illegal gambling business), Racketeering Act 25 (conspiracy to commit murder and murder), and Racketeering Act 44 (Hobbs Act extortion).  Id. ¶¶ 2-6.

      At the time of his arrest, the defendant had been involved in organized crime for over 30 years as an employee and high-ranking member of the Bonanno Family.  During that period, the defendant served at various times as the acting boss and the acting consigliere, and at other times as a captain, soldier, and associate.  PSR ¶ 9.  While serving in

those roles, the defendant committed himself to accomplishing the Bonanno Family objectives by engaging in extortion, illegal gambling, and murder, among other criminal activities of a particularly violent and destructive nature. He also served as a conduit between the boss and other members of the Bonanno Family during the boss's incarceration, which assured that the Bonanno Family could continue to engage in criminal behavior to serve its financial interests even after its members were arrested, charged, and incarcerated for their crimes. Id.

As to Racketeering Act 25, the defendant and others conspired to murder Anthony Tomasulo because he was not paying proceeds from joker-poker machines over to the Bonanno Family and resisted efforts by the Bonanno Family to take the machines. Id. ¶ 32. The defendant met with Tomasulo and brought him to a social club where another conspirator was lying in wait. Id. ¶ 33. Once the defendant and Tomasulo arrived, the conspirator emerged from the restroom and shot Tomasulo dead. Id. The defendant and others then placed Tomasulo's corpse into a body bag and put the body bag into Tomasulo's truck, which was driven away and abandoned. Id. ¶ 34.

Although the United States Sentencing Guidelines ("U.S.S.G.") range of imprisonment for the defendant's conduct was 296 to 365 months (id. ¶ 134), the parties agreed to recommend a sentence of 240 months' imprisonment pursuant to a Rule 11(c)(1)(B) plea agreement (id. ¶ 8). The plea agreement also included an appellate and collateral attack waiver by which the defendant waived his right to appeal his conviction and sentence as long as the Court imposed a sentence of imprisonment of 405 months or below. See Plea Agm't ¶ 4 ("The defendant agrees not to file an appeal or otherwise challenge the conviction or sentence in the event that the Court imposes a term of imprisonment of 405 months or below.").

At sentencing, the Court accepted the parties' recommendation and sentenced the defendant to 240 months' imprisonment. See ECF Dkt. No. 545.

B.     The Prior Motion for Compassionate Release

On January 31, 2019, the defendant requested that the Bureau of Prisons ("BOP") recommend that he be granted compassionate release. See ECF Dkt. No. 1202 at 8. When the BOP did not respond within 30 days, the defendant filed a motion with the Court for compassionate release. See ECF Dkt. No. 1189.

The Court denied that motion. See ECF Dkt. No. 1216 (the "Order"). As relevant here, the Court held that it was "unable to conclude that Petitioner no longer presents a danger to the safety of any other person or to the community." Order 5. The Court noted that the defendant "was involved in organized crime for over thirty years as an employee and high-ranking member of the Bonanno Family of La Cosa Nostra," during which time he "engaged in extortion, illegal gambling, and murder." Id. The Court further noted that the defendant had not alleged that he suffered from any terminal illnesses. See id. Thus, "[g]iven the nature of his crime and his relatively advanced age at the time of

2

conviction — after decades of ongoing criminal activity — Petitioner's age does not weigh as strongly in favor of compassionate release as it might in other cases." Id.

        C.      The Current Motion

On April 28, 2020, the defendant filed the instant motion. On May 1, 2020, the Court ordered the government to respond by May 18, 2020.

II.     Argument

The motion, which is styled as a "Motion for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(2)" contains numerous claimed grounds for the reduction of the defendant's sentence. None have merit.

        A.      18 U.S.C. § 3582(c)(2)

As an initial matter, the defendant is not eligible for relief pursuant to § 3582(c)(2), which allows for sentence reductions based on retroactive amendments to the Guidelines. See Dillon v. United States, 560 U.S. 817, 821 (2010) ("When the Commission makes a Guidelines amendment retroactive, 18 U.S.C. § 3582(c)(2) authorizes a district court to reduce an otherwise final sentence that is based on the amended provision."). The defendant does not identify any amended Guidelines that would affect his sentence. In fact, the defendant's Guidelines range was primarily determined by U.S.S.G. § 2A1.1 (murder) (PSR ¶¶ 60-96), which has the same base offense level now (43) as it did when the defendant was sentenced (cf. PSR ¶ 73). Accordingly, to the extent the defendant seeks a reduction of his sentence pursuant to § 3582(c)(2), the Motion should be denied.

        B.      The First Step Act

Liberally interpreting the defendant's motion, the defendant also claims that he is entitled to relief under § 404 of the First Step Act. See Mot. 8-9 (citing United States v. Maupin, No. 19-6817 (4th Cir. Sept. 9, 2019), and United States v. Walker, No. 95-CR-101 (NAM) (N.D.N.Y. Oct. 25, 2019), both of which concern § 404 of the First Step Act); see id. at 16-17 (requesting resentencing pursuant to the First Step Act). That provision of the First Step Act permits courts to reduce a defendant's sentence where a defendant was sentenced under the statutory penalty scheme for cocaine base (i.e., crack) offenses that existed prior to the Fair Sentencing Act of 2010. See generally United States v. Holloway, --- F.3d ---, No. 19-1035-CR, 2020 WL 1966840, at *2 (2d Cir. Apr. 24, 2020) (discussing First Step Act § 404); see also United States v. Pressley, No. 03-CR-297 (NGG), 2020 WL 979867, at *2 (E.D.N.Y. Feb. 28, 2020) (same).

Because the defendant was not sentenced based on (or convicted of) any crack offenses, § 404 of the First Step Act is inapplicable here. The Motion should therefore be denied to the extent the defendant seek relief pursuant to that provision.

   C.  *Davis* Issues

  The defendant appears to argue that racketeering conspiracy is not a crime of violence under United States v. Davis, 139 S. Ct. 2319 (2019), which declared unconstitutional the "residual clause" portion of the definition of "crime of violence" in 18 U.S.C. § 924(c)(3). See Mot. 9-10. But even assuming that is true, the only effect of that argument would be to invalidate any convictions under 18 U.S.C. § 924(c) that were premised on racketeering conspiracy. Here, the defendant was not convicted of any § 924(c) violations. Whether racketeering conspiracy is a crime of violence therefore has no relevance to this case.

  Moreover, any Davis challenge would be barred by the waiver of collateral attacks in the defendant's plea agreement, as set forth above. See Collier v. United States, No. 10-CR-820 (NGG), 2019 WL 296767, at *5 (E.D.N.Y. Jan. 23, 2019) ("The Second Circuit has clearly announced that collateral attack waivers in this context remain enforceable, and that a change in the law does not supply a basis for failing to enforce a plea agreement's collateral attack waiver."). The defendant's Davis arguments should therefore be rejected.

   D.  Compassionate Release

  The defendant also attempts to again move for compassionate release, claiming that he "now faces inadequate care" because of the ongoing COVID-19 pandemic. Mot. 12-13. This portion of the Motion should be denied both because the defendant has failed to exhaust his administrative remedies and because it is meritless.

  Pursuant to 18 U.S.C. § 3582(c)(1)(A), a defendant moving for compassionate release must either "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or wait until "the lapse of 30 days from the receipt of such a request by the warden." Consequently, a court may not grant a defendant's compassionate release motion absent exhaustion of the administrative remedies, as numerous courts, including the only Court of Appeals to have addressed the issue, have held. See, e.g., United States v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (holding that "any remand" to the district court to consider a compassionate release motion "would be futile" in light of the defendant's failure to exhaust, which "presents a glaring roadblock foreclosing compassionate release"); United States v. Napout, No. 15-CR-252 (PKC), ECF No. 1365 (E.D.N.Y. Apr. 14, 2020) ("exhaustion of administrative remedies, as set forth in Section 3582(c)(1)(A), is at least a statutory requirement and [the defendant's] failure to satisfy this requirement deprived the Court of the authority to grant him a sentencing reduction under 3582(c)(1)(A)."); United States v. Flores, No. 15-CR-152 (RRM), ECF No. 47 (E.D.N.Y. Apr. 12, 2020) (finding that the Court could not consider the motion of a defendant that failed to satisfy the exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A)).

  Here, although the defendant requested that the BOP make a compassionate release motion on his behalf in January 2019, the Court denied the motion resulting from that

request.  See Order.  Since then, the defendant has not filed a new request with the BOP raising the new grounds he advances here.  Accordingly, the defendant has failed to exhaust his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A) and is therefore ineligible for compassionate release.

Further, even if the Court could consider the defendant's motion for compassionate release on the merits, the defendant has offered nothing to alter the Court's prior conclusion that he is too dangerous to be released.  See Order 5.  The only new factor identified by the defendant is the existence of COVID-19.  Yet the defendant overlooks that, as of May 18, 2020, there has not been a single confirmed case of COVID-19 at the institution where he is imprisoned, FCI Allenwood Low.  BOP Resources Page, https://www.bop.gov/coronavirus; see United States v. Shkreli, No. 15-CR-637 (KAM), ECF Dkt. No. 734 at 5-6 (E.D.N.Y. May 16, 2020) ("[D]efendant has not demonstrated 'extraordinary and compelling' factors that would mandate his release [because] FCI Allenwood Low has zero reported cases of COVID-19 . . . ."); United States v. Messina, No. 11-CR-31 (KAM) (E.D.N.Y. May 11, 2020) ("[A]s of May 8, 2020, no inmates have tested positive for COVID-19 at FCI Allenwood Low, so the risk of infection at [the] facility is minimal.").  Under those circumstances, courts have recognized that the risks of COVID-19 infection would be heightened, not reduced, by the defendant's release.  See Messina, No. 11-CR-31 (KAM) (E.D.N.Y. May 11, 2020).  And even if there were a real risk that the defendant could become infected with COVID-19, that risk would not in any way reduce the defendant's dangerousness, which the Court has already held bars him from compassionate release.

The defendant's request for compassionate release should therefore be denied.

E.   The Defendant's Sentencing Challenges

The defendant further raises several challenges to his sentence and to his counsel's performance in arguing at the defendant's sentencing.  Mot. 13-15.  Liberally construing the Motion to raise a claim under 28 U.S.C. § 2255, this claim fails as well.

First, the defendant's claims are barred by the collateral attack waiver in his plea agreement.  See Ukpabi v. United States, No. 14-CR-00373 (NGG), 2019 WL 2568758, at *2 (E.D.N.Y. June 20, 2019) (holding claim of ineffective assistance of counsel at sentencing was barred by plea agreement).

Second, the defendant's claims are time barred, as any § 2255 petition must generally be filed within one year of a conviction becoming final, which in this case, occurred over 10 years ago.  See § 2255(f)(1).  Although there are certain statutory circumstances to restart the clock — such as the discovery of new evidence that was not previously available — the defendant does not allege that any of those circumstances apply here.  See Locurto v. United States, No. 10-CV-4589 (NGG), 2018 WL 1157793, at *6 (E.D.N.Y. Mar. 2, 2018) ("Section 2255 petitions are subject to a one-year statute of limitations that runs, most generously to Petitioner, from the date on which the facts

5

supporting the claim or claims presented could have been discovered through the exercise of due diligence.").

Third, a defendant challenging a sentence pursuant to § 2255 must identify "a defect in sentencing which raises constitutional issues, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Baquero v. United States, No. 16-CV-3070 (NGG), 2020 WL 42809, at *1 (E.D.N.Y. Jan. 3, 2020). The defendant's sole argument, that a sentence of 20 years for his conduct — which includes murder — was substantively unreasonable and did not adequately account for alleged sentencing disparities, does not rise to that level.

Moreover, defense counsel successfully negotiated for a Rule 11(c)(1)(B) plea agreement that recommended a sentence of 240 months' imprisonment — 52 months below the bottom of the applicable Guidelines range. See Plea Agm't ¶ 2. Under the agreement, the defendant was precluded from arguing for any downward departure below that recommended sentence. Id. Given the below Guidelines sentence and the plea agreement provisions, counsel was far from ineffective and the defendant was not prejudiced by counsel's failure to argue for a sentence below 240 months.

The defendant's challenge to his sentence should thus be rejected.

III. Conclusion

For the reasons set forth herein, the Motion should be denied in its entirety.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:   /s/ Jonathan Siegel
Jonathan Siegel
Assistant U.S. Attorney
(718) 254-6293

cc:   Clerk of the Court (NGG)
      Anthony Urso (via U.S. Mail)

## CERTIFICATE OF SERVICE

AUSA Jonathan Siegel, hereby declares and states as follows:

That on May 18, 2020, I caused to be served by the Office of the United States Attorney, Brooklyn, New York, the following:

- Government Letter, dated May 18, 2020, in Opposition to the Defendant's Motion.

by U.S. Mail to the person at the place and address as follows:

Anthony Urso
04109-748
Allenwood Low
Unit SA
Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 1000
White Deer, PA 17887

The undersigned affirms under penalty of perjury that the foregoing is true and correct.

Dated:   Brooklyn, New York
         May 18, 2020

/s/  Jonathan Siegel
AUSA Jonathan Siegel